UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ROBERT MENDOZA, | ) | Civil No. 05-CV-1938-L(NLS) |
| Petitioner, | ) ) | **ORDER REJECTING THE REPORT AND RECOMMENDATION;** |
| v. | ) ) | **GRANTING THE PETITION FOR WRIT OF HABEAS CORPUS [doc.** |
| ROBERT J. HERNANDEZ, | ) ) | **#1]; and DIRECTING ENTRY OF JUDGMENT** |
| Respondent. | ) ) ) | |

Petitioner Robert Mendoza filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. The Honorable Nita L. Stormes entered a Report and Recommendation ("Report"), under 28 U.S.C. § 636(b)(1), recommending that the petition be denied. [doc. #20] The parties have filed objections to the Report and respondent has filed a reply to petitioner's objections. [doc. # 21, 22, 23]

The district court's role in reviewing a magistrate judge's Report is set forth in 28 U.S.C. § 636(b)(1). Under this statute, "the district judge must review the magistrate judge's findings and recommendations *de novo* if objection is made, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.) (*en banc*), *cert. denied*, 124 S. Ct. 238 (2003); *see Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1225-26 & n.5 (D. Ariz. 2003) (applying *Reyna-Tapia*'s holding to a habeas corpus proceeding). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. §

636(b)(1).

## PROCEDURAL BACKGROUND[1]

On August 31, 1982, Mendoza entered into a negotiated plea agreement with the state and pleaded guilty to unpremeditated second degree murder. Thereafter, Mendoza was sentenced to 15 years to life with the possibility of parole. (*See* Lodgment 1; *see also* Lodgment 2 at 2.) His minimum eligible parole date was August 21, 1990. (*Id*.) In 1990, 1991, and 1994, the Board of Prison Terms[2] ("Board") found Mendoza unsuitable for parole and refused to set his prison term or a parole date. But in 1995, a unanimous Board panel found Mendoza suitable for parole and set his term and a parole date. Nevertheless, the Board's review unit "disapproved" the decision. In 1998, a unanimous Board panel again found Mendoza suitable for parole and set his term and a parole date. Later that year, Governor Gray Davis reversed the decision. In 1999, 2001, and 2002, Board panels found Mendoza unsuitable for parole. (Pet. at 4.) On June 23, 2004, at his ninth hearing for parole suitability, fourteen years afer his minimum eligible parole date and seven years after he completed his minimum term, a unanimous Board panel found Mendoza suitable for parole. (*See* Lodgment 5 at 80-85.) But on November 9, 2004, Governor Arnold Schwarzenegger reversed the panel's decision. (Contained within Lodgment 10.)

Thereafter, Mendoza filed a habeas petition challenging the Governor's decision with the Los Angeles County Superior Court, which the court denied on June 27, 2005. (Lodgment 9.) Mendoza then filed a habeas petition with the California Court of Appeal, which was denied on July 14, 2005. (Lodgment 11.) The California Supreme Court denied a petition for review on September 28, 2005. (Lodgment 13.)

With the assistance of counsel, Mendoza filed the present federal habeas petition on October 11, 2005, [doc. # 1] arguing that (1) Governor Schwarzenegger's November 9, 2004

---

[1] The parties do not dispute the factual and procedural background of this matter; therefore, the background section is taken from the Magistrate Judge's Report and Recommendation.

[2] On July 1, 2005, California created the Board of Parole Hearings to replace the Board of Prison Terms. CAL. PENAL CODE § 5075(a)

reversal of Board's grant of parole to Mendoza lacked any evidentiary support, was inapposite to the record, and relied upon unchanging offense factors and therefore, violated Mendoza's due process rights; (2) the Governor's reversal, which re-characterized petitioner's offense as first degree murder, violated Mendoza's due process rights because it vitiated the express terms of Mendoza's plea agreement; and (3) the additional level of gubernatorial review now required by California for parole grants for convicted murderers violates Mendoza's due process under the *ex post facto* clause of the Constitution.

The magistrate judge entered her Report on June 27, 2007, and recommended that the petition be denied. Because both parties have filed objections to the Report, the Court will review the petition *de novo.*

**DISCUSSION**

**1.  Legal Standards**

This Court may grant habeas relief only if the California Court of Appeal[3] acted contrary to or unreasonably applied clearly established Supreme Court precedent, or made an unreasonable determination of facts. *See* 28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-73 (2003). A "state court decision is contrary to . . . clearly established [Supreme Court] precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [its] precedent." *Id.* at 73 (internal quotation marks omitted).

A due process claim is analyzed in two steps. First, the court must determine whether there is a liberty or property interest which has been interfered with by the State. Second, the court must consider whether the procedures provided are constitutionally sufficient. *Sass v. California Board of Prison Terms*, 462 F.3d 1123, 1128 (9th Cir. 2006).

It is settled law that California prisoners whose sentences provide for the possibility of

---

[3] Petitioner brought his petition for writ of habeas corpus to the California Supreme Court which was denied without comment. Thus, in reviewing petitioner's claims of violation of his due process and liberty interests, this Courts looks to the reasoned opinion of the California Court of Appeals. *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 805 (1991).

parole have a "constitutionally protected liberty interest in the receipt of a parole release date," and a parole board's decision to deny parole deprives a prisoner of due process if it is not supported by "some evidence." *Irons v. Carey*, 505 F.3d 846, 850-51 (9th Cir. 2007) (citing *Sass*, 461 F.3d at 1128-29); *see also Superintendent v. Hill*, 472 U.S. 445, 457(1985).

### 2. The "Some Evidence" Standard

The "some evidence" standard requires only a "modicum of evidence." *Hill*, 472 U.S. at 455. It "is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced." *Id*. (internal quotation marks, ellipsis and citation omitted). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the . . . board." *Id*. at 455-56. This standard "does not require evidence that logically precludes any conclusion but the one reached by the . . . board." *Id*. at 477.

As the Court of Appeals in *Irons* noted: "When we assess whether a state parole board's suitability determination was supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state. Accordingly, . . . we must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by 'some evidence' in [Petitioner's] case constituted an unreasonable application of the 'some evidence' principle articulated in [*Superintendent v. Hill*, 472 U.S. 445, 454 (1985)]. *Id*., 505 F.3d at 851.

### 3. Parole Determinations

Under California law, prisoners serving an indeterminate life sentence, like petitioner, become eligible for a parole date after serving minimum terms of confinement required by statute. CAL. PENAL CODE § 3041(a). California law provides that, at that point, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the

prisoner. CAL.PENAL CODE § 3041(b).

In 1988, the California Constitution was amended to provide for gubernatorial review of Board parole decisions: "the Governor, after examining the record before the Board, and applying the same factors the Board is required to consider, may affirm, modify, or reverse a Board order granting or denying parole on a murder sentence." *In re Dannenberg*, 34 Cal.4th 1061, 1086 (2005). Both the Governor and the Board are required to have "some evidence" that the inmate poses an unreasonable threat to society in order to deny parole. *Id.* at 1095. "[A] life prisoner shall be found unsuitable for and denied parole if in the judgment of the [Board or the Governor] the prisoner will pose an unreasonable risk of danger to society if released from prison." CAL. CODE REGS., tit. 15, § 2402, subd. (a).

> [C]ircumstances tending to establish unsuitability for parole are that the prisoner (1) committed the offense in an especially heinous, atrocious, or cruel manner; (2) possesses a previous record of violence; (3) has an unstable social history; (4) previously has sexually assaulted another individual in a sadistic manner; (5) has a lengthy history of severe mental problems related to the offense; and (6) has engaged in serious misconduct while in prison.

CAL. CODE REGS., tit. 15, § 2402, subd. (c).

**4.    Board's Decision to Grant Parole; Governor's Decision to Deny Parole**

As pointed out above, the Board found petitioner suitable for parole because he would not pose an unreasonable risk of danger to society or a threat to public safety if released from prison. The Board carefully reviewed petitioner's entire record and noted that while in prison, petitioner enhanced his ability to function within the law, he participated in educational programs, had gotten a GED, and became a certified welder.[4] Petitioner was involved in various self-help programs with respect to substance abuse, including AA/NA since 1991. Through his work as a welder for eight years, he has amassed a savings of $9,000. His parole plans were considered realistic and included family support and multiple offers of residence.

The Board noted petitioner's institutional life improved with no incident reports since 1989; he accepted responsibility for his behavior; understood the magnitude of his offense; and

---

[4] *See* Board of Prison Terms June 23, 2004 Hearing, Reporter's Transcript of Record at 80 *passim*. (Lodgment 5.)

1  demonstrated remorse.  The Board also recognized that petitioner's understanding of his early
2  criminal behavior leading to his commitment offense allowed him to know "what he needs to do
3  in order to avoid having anything like this happening in his future."
4       In reviewing the October 7, 2002 psychiatric report, the Board pointed to Doctor Mura's
5  comments that petitioner had viable plans for the future, community support, and the maturity to
6  remain focused on his goals upon release.  The Board went further by commending petitioner for
7  maintaining a positive attitude and his belief that he would be released and be of assistance to his
8  family notwithstanding disappointments and frustrations.
9       In summarizing the evidence, the Board found that petitioner had

> the inner strength, internal resources, and skills necessary, . . . to become a productive and law abiding citizen and member of society.  He displays the ability to look beyond himself, to be self-reflective, and to evaluate the motivations behind his behavior and take the proper course of action. He's definitely learned from the actions that he has previously taken. . . . He has the internal resources as well as the motivation and commitment to make something of his life and to assist others. . . . There are no significant risk factors or precursors to violence that this writer can think of at this time.

15 (Lodgment No. 5 at 83-85.)  The Board approved petitioner for parole.
16      Thereafter, on November 9, 2004 Governor Schwarzenegger, in a written statement,
17 reversed the Board and found that petitioner's parole would present an unreasonable risk to
18 public safety.  (Contained within Lodgment 10).  In presenting his reasons for reversing the
19 Board's decision to grant parole, the Governor noted that petitioner did not have an employment
20 offer or any job prospects upon parole.[5]  *Id.* at 2.  But the Governor's determinative factor for
21 denying petitioner parole was the nature of his offense, *i.e.,* it was intentional, deliberate and
22 premeditated and therefore constituted "an especially grave second-degree murder."  *Id.* at 2-3.
23 The Governor stated: "this factor alone is a sufficient basis on which to conclude that Mr.

---

[5] Although the Governor mentioned petitioner does not have employment promised to him, employment is not a necessary prerequisite to parole. 15 Cal. Code Reg. §2402(d)(8). Instead, a potential parolee must have made "realistic plans for release" or "developed marketable skills that can be put to use upon parole." *Id.* The Board found, and the Governor does not dispute, petitioner has a viable plan for himself upon release and has training and work experience as a welder, which should assist him in successfully obtaining a position upon release.

Mendoza's release from prison would pose an unreasonable public-safety risk at this time." (*Id.* at 3). The Governor's decision relied solely on an "unchanging factor": the circumstances of the commitment offense.[6] Unchanging factors include the commitment offense and conduct committed prior to imprisonment. *Biggs v. Terhune*, 334 F.3d 910, 916 (9th Cir. 2003).

In *Biggs,* the Court upheld the Board's denial of parole but strongly noted that over time, when the Board's decision to deny parole is based solely on unchanging factors, such reliance "would raise serious questions involving [a prisoner's] liberty interest in parole." *Id.* The *Biggs* Court's admonishment was echoed in *Irons v. Carey*, 505 F.3d 846, 851 (9th Cir. 2007): "in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes." *Id.* at 854.[7]

More recently, the Ninth Circuit found in *Hayward v. Marshall*, 512 F.3d 536, 546 (9th Cir. 2008) that due process was violated because there was no evidence in the record to support the decision that the offender was an unreasonable public safety risk and therefore unsuitable for parole. In reviewing the test of "some evidence", the Court stated:

> The test is not whether some evidence supports the reasons the Governor [or Board] cites for denying parole, but whether some evidence indicates a parolee's release unreasonably endangers public safety. Some evidence of the existence of a particular factor does not necessarily equate to some evidence the parolee's release unreasonably endangers public safety.

*Hayward*, 512 F.3d at 543 (quoting *In re Lee*, 143 Cal. App. 4th 1400, 1408 (Cal. Ct. App. 2006).

Here, as in *Hayward*, there is no evidence in the record to support a determination that petitioner's release would unreasonably endanger public safety based on his commitment offense. The Board reviewed and addressed the entire record concerning petitioner's suitability

---

[6] To the extent the Governor relied on petitioner's pre-conviction criminal history, that too is an "unchanging factor".

[7] In prior cases where the Ninth Circuit upheld the Board's decision to deny parole on the sole basis of the commitment offense, the prisoner had not served his minimum time. *See, Irons*, 505 F.3d 846 and *Sass*, 461 F.3d 1123, *Biggs*, 334 F.3d 910. Much like the prisoner in *Hayward*, petitioner's term of incarceration has greatly exceeded the minimum number of years required by his sentence.

for parole and found no factors that demonstrated petitioner would be a risk to the safety of the public, including petitioner's commitment offense.

The Governor based his decision to reverse the well-documented and reasoned record of the Board by relying exclusively on the "unchanging factor" of petitioner's offense and not with any evidence contradicting the findings of the Board. Petitioner's commitment offense, occurring more than 25 years ago, does not and cannot demonstrate, standing alone, that petitioner's release will pose a danger to public safety. *See Hayward*, 512 F.3d at 546 (citing *Rosenkrantz v. Marshall*, 444 F. Supp.2d 1063, 1084 (C.D. Cal. 2006).

All the circumstances described above lead to the conclusion that petitioner was denied due process when the Governor overruled the decision of the Board and denied petitioner parole by not providing some evidence demonstrating petitioner was a public safety threat. Accordingly, the state court's decision holding that the Governor's findings were supported by some evidence constitutes an unreasonable application of the "some evidence" principle articulated in *Hill*.

Based on the foregoing, **IT IS ORDERED** rejecting the Report and Recommendation, sustaining petitioner's objection and overruling respondent's objection. **IT IS FURTHER ORDERED** granting the petition for writ of habeas corpus [doc. #1]. **IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment in accordance with this Order.

**IT IS SO ORDERED.**

DATED: April 29, 2008

M. James Lorenz
United States District Court Judge

COPY TO:

HON. NITA L. STORMES
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL